UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RICHARD FREIBERG
    Plaintiff,

v.                            CASE NO. 3:16-cv-00037(RNC)

WILLIAM STUART ET AL.
    Defendants.

## RULING AND ORDER

Plaintiff Richard Freiberg brings this suit against defendants William and Jonathan Stuart and their attorney, Sandra Akoury, seeking damages for vexatious litigation. Freiberg prevailed in a case the Stuarts brought against him while represented by Attorney Akoury. In that underlying case, the Superior Court granted summary judgment in favor of Freiberg, the Appellate Court reversed, and the Supreme Court then upheld the grant of summary judgment over a dissent. See Stuart v. Freiberg, 116 A.3d 1195, 1197-98 (Conn. 2015). Defendants have moved for summary judgment against Freiberg, contending that the underlying suit against him was supported by probable cause. William and Jonathan also rely on an affirmative defense of advice of counsel. For reasons that follow, the motions for summary judgment are granted.

## I. Background

Kenneth Stuart Sr. created a living trust and will to benefit his three sons, Kenneth, William and Jonathan. After his

1

death, his son Kenneth became the trustee of his estate and, in that capacity, began sending financial summaries to William and Jonathan. William and Jonathan soon realized that Kenneth had created a limited partnership with their father and used it to transfer estate assets to himself. Id. ¶¶ 5, 8. Attorney Akoury assisted them in bringing suit against Kenneth for breach of fiduciary duty.

After the suit was filed, Kenneth hired Freiberg, an accountant. Id. ¶ 12. Freiberg prepared financial statements and tax returns for Kenneth personally and for the estate. Id. While providing services for the estate, Freiberg realized that Kenneth was improperly paying personal expenses and commingling his funds with estate funds. Id. ¶ 14. Even so, he continued to prepare financial statements for the estate and sent them to beneficiaries of the estate, including William and Jonathan. Id. ¶ 16-20. Freiberg does not dispute that his reports were reviewed by Jonathan. It is also undisputed that William and Jonathan spoke with Freiberg about his reports and accounting work. William and Jonathan hired accountants of their own, including a forensic accountant, to review Freiberg's reports. The forensic accountant found that Freiberg had created a fictitious credit of $490,755, which benefitted Kenneth.

The suit against Kenneth was eventually successful, resulting in an award of damages to the estate. William and

Jonathan then consulted with Attorney Akoury about the possibility of bringing a suit against Freiberg for conspiring with Kenneth or aiding and abetting his conversion of estate funds. William and Jonathan subsequently authorized her to sue Freiberg.

Attorney Akoury filed a complaint against Freiberg in Connecticut Superior Court asserting claims for fraud, negligent misrepresentation, accountant malpractice and violations of CUTPA. Freiberg moved for summary judgment on all the claims. The Court granted the motion on the ground that William and Jonathan could not prove they relied on Freiberg's accounting statements as they claimed. Stuart v. Freiberg ("Stuart I"), No. FSTCV0402005085, 2011 WL 3671904 (Conn. Super. Ct. July 15, 2011). The Appellate Court reversed on the ground that genuine issues of material fact existed with regard to the claims of fraud, negligent misrepresentation, and malpractice. Stuart v. Freiberg ("Stuart II"), 69 A.3d 320, 334 (Conn. App. Ct. 2013). The Connecticut Supreme Court reversed, with one justice dissenting. Stuart v. Freiberg ("Stuart III"), 116 A.3d at 1197-98.

## II. Legal Standard

Summary judgment may be granted when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

3

P. 56(a). When the motion tests the plaintiff's ability to sustain his burden of proof at trial, the movant can prevail by showing that the plaintiff lacks evidence to support an element of his claim. To avoid summary judgment, the plaintiff must point to evidence that would support a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "[M]ere conclusory allegations or denials" are not enough. Podell v. Citicorp Diners Club, 112 F.3d 98, 101 (2d Cir. 1997).

To prevail on his claim of vexatious litigation, Freiberg must establish four elements: (1) a suit was brought against him, (2) the suit lacked probable cause, (3) the suit was brought with malice, and (4) the suit terminated in his favor. See Falls Church Grp. v. Tyler, Cooper, and Alcorn, LLP, 912 A.2d 1019, 1026-27 (Conn. 2007). Vexatious litigation suits often turn on the element of probable cause. This one is no exception.

Probable cause "is the knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action." Id. at 1027. Reliance on advice of counsel is a complete defense even when the advice was "unsound or erroneous." Evans v. Testa Dev. Assocs., No. CV01806425, 2002 WL 725483, at *3 (Conn. Super. Ct. Mar. 26, 2002) (quoting Vandersluis v. Weil, 407 A.2d 982, 987 (Conn. 1978)). Reliance on the advice of counsel is an affirmative defense with respect to which the defendant bears the burden of

4

proof. Verspyck v. Franco, 874 A.2d 249, 253 (Conn. 2005). The defendant must show that he relied on advice of counsel "after a full and fair statement of all facts within his knowledge, or which he was charged with knowing." Id. (quoting Vandersluis, 407 A.2d at 987).

### III. Discussion

#### A. Probable Cause

Defendants argue that there is no genuine issue of material fact with regard to whether probable cause existed to sue Freiberg on the claims in the underlying case. I agree with them.

##### 1. Fraud and Negligent Misrepresentation

To prevail against Freiberg on the claim for fraud, the Stuarts needed to prove that he: (1) made a false representation, (2) that he knew was untrue, (3) in order to induce them to act on it, and (4) their reliance on the statement resulted in harm supporting an award of damages. Capp Indus., Inc. v. Schoenberg, 932 A.2d 453, 464 (Conn. App. 2007). The negligent misrepresentation claim differs only in that it requires proof of a false statement made negligently. See Coppola Const. Co., Inc. v. Hoffman Enters. Ltd. P'ship, 71 A.3d 480, 487 (Conn. 2013).

Freiberg does not genuinely dispute that he made misrepresentations. Instead, he claims that the Stuarts lacked probable cause as to reliance and causation.

Defendants argue that probable cause existed to support the claims against Freiberg based on the following facts, which are not genuinely disputed. First, inaccuracies in Freiberg's accounting records led William and Jonathan to pay their own accountants to investigate Kenneth's mishandling of estate funds. Second, William and Jonathan changed their litigation strategy against Kenneth because they expected to receive accurate accounting from Freiberg. And third, Freiberg facilitated Kenneth's misappropriations.

Freiberg purports to disagree with all these facts but primarily relies on another regarding the timing of this protracted litigation: that William and Jonathan filed their lawsuit against Kenneth before Freiberg performed any accounting services for the estate. Thus, Freiberg argues, William and Jonathan could not have relied upon his alleged misrepresentations.

However, that Kenneth was sued before Freiberg was hired is not dispositive. Assuming that Freiberg has demonstrated that the brothers did not rely on his misrepresentations in one manner - i.e., by declining to file suit based on Freiberg's records - does not demonstrate that the brothers lacked probable cause to believe that they had relied on his misrepresentations in other ways. For instance, William and Jonathan first filed suit against Kenneth in 1993, Freiberg was hired in 1994 and worked

6

for Kenneth until 2001, and the trial court's memorandum of decision in the litigation between the three brothers was issued in 2004.  Stuart III, 116 A.3d at 1199.  The trial court judge noted the "languorous" approach that William and Jonathan took in prosecuting the case.  Id. at 1200.  And among the damages awarded to William and Jonathan were $180,000 to cover the fees of the forensic accountant they hired.  Id. at 1200.  In these circumstances, the Stuarts have sufficiently established that they had probable cause to believe they had relied on Freiberg's statements, and that their reliance caused them harm.

Freiberg points to the opinion of the Connecticut Supreme Court reversing the Appellate Court and reinstating judgment in his favor.  The decision of the Supreme Court does not help Freiberg on the issue of probable cause presented here.  The Supreme Court ruled in Freiberg's favor on a motion for summary judgment, which is judged according to a different standard than probable cause.  That it so ruled after discovery, with the benefit of affidavits and depositions, upon which the decision heavily relied, has no bearing on the question of whether William and Jonathan had probable cause to file their suit in the first instance. And, of course, at least one member of the Connecticut Supreme Court thought that there remained a genuine dispute of fact that would preclude summary judgement on the question of

reliance.  See Stuart III, 116 A.3d at 1212 (Eveleigh, J., dissenting).

Furthermore, it is apparent from the record that Freiberg prevailed in the Supreme Court not because William and Jonathan's claims lacked a factual basis, but because of strategic mistakes by the brothers in earlier stages of the litigation.  As shown by the majority and dissenting opinions, plausible theories of liability could have been advanced against Freiberg, but the complaint mistakenly focused on "reliance" instead of "causation" and alleged no harm other than delays in "seeking to remove [Kenneth] as a fiduciary" and "pursuing claims against him in Superior Court."  Id. at 1210; see also id. at 1213 n.2 (Eveleigh, J., dissenting).  Accordingly, there is no genuinely disputed issue of material fact as to whether the defendants had probable cause to pursue fraud or negligent misrepresentation claims against Freiberg.

 2. Accounting Malpractice

A malpractice claim has four elements: "(1) a duty to conform to a professional standard of care for the plaintiff's protection; (2) a deviation from that standard of care; (3) injury; and (4) a causal connection between the deviation and the claimed injury."  Stuart III, 116 A.3d at 1210.  Freiberg claims that probable cause was lacking for the accounting malpractice

claim because there were no facts to support the element of causation.

As discussed in the Supreme Court dissent, William and Jonathan had to pay a forensic accountant to trace money improperly taken by Kenneth, and Kenneth was still able to misappropriate trust assets after Freiberg undertook to serve as the estate's accountant. Id. at 1213-15 (Eveleigh, J., dissenting). Those facts, which are not genuinely disputed, adequately support the causation element of the malpractice claim.

Freiberg also asserts that probable cause was lacking for the duty element of the malpractice claim, stating, "the trial court found that there was no legal duty in terms of accounting malpractice." However, a plaintiff is permitted to pursue a cause of action that is not conclusively foreclosed by binding precedent without necessarily exposing his or herself to a suit for vexatious litigation. See Falls Church Group, Ltd., 912 A.2d at 1032. Defendants have shown that the issue of an estate accountant's duty to estate beneficiaries remained open when the malpractice claim was brought. Cf. Stuart III, 116 A.3d at 1216 (Eveleigh, J., dissenting) ("I will now discuss my view that the defendant, although hired by Kenneth as executor of Stuart's estate, owed a legal duty to the plaintiffs as the estate's

beneficiaries."). Accordingly, the Stuarts' suit was not unreasonable. See Falls Church Group, Ltd., 912 A.2d at 1032.

3.  CUTPA

CUTPA authorizes litigation against a defendant who "engages in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). Freiberg claims that CUTPA was employed vexatiously in the action against him because his alleged wrongdoing did not involve "commercial or entrepreneurial aspects of an accounting practice." Stuart II, 69 A.3d at 334. As just discussed, a claim that remains available - that is, a claim that is not conclusively foreclosed - under existing law is not vexatious provided it has an adequate factual basis. See Falls Church Grp, Ltd., 912 A.2d at 1032.

At the time the underlying suit was brought, the scope of CUTPA's application to accountants had not been established by the Connecticut Supreme Court. See Stuart II, 69 A.3d at 334. Under the law as it then existed, an accountant's entrepreneurial practices for purposes of CUTPA could include "solicitation of business and billing practices." Haynes v. Yale-New Haven Hosp., 699 A.2d 964, 973 (Conn. 1997). The complaint against Freiberg alleged that he improperly billed the estate for work performed on behalf of Kenneth. Freiberg has not shown that this allegation lacked the factual basis required for probable cause.

10

B.  <u>Advice of Counsel</u>

In further support of their motion for summary judgment, William and Jonathan rely on Attorney Akoury's advice that the claims against Freiberg were adequately supported in fact and law. They have testified without contradiction that they relied on her advice in good faith after providing her with all relevant facts within their personal knowledge. They emphasize that Attorney Akoury was counsel for them in the suit against Kenneth, which provided her with access to information concerning the factual basis for the claims later brought against Freiberg. In response, Freiberg points to Attorney Akoury's testimony that she relied on information received from her clients. However, he fails to point to evidence supporting a finding that either William or Jonathan was aware of a consequential fact and withheld it from their attorney.

The Restatement describes a vexatious litigant as one who "goes from attorney to attorney until at last he finds one who, contrary to the opinion of those who preceded him, is willing to advise the bringing of a prosecution." Restatement (Second) of Torts § 666 (1977). The situation in this case could not be more different. Before authorizing suit against Freiberg, William and Jonathan did not shop for a lawyer willing to sue. They relied on the advice of the same lawyer who had represented them in the underlying suit against Kenneth. In the absence of evidence

permitting a finding that they failed to disclose facts to Attorney Akoury - and again there is no such evidence - it must be concluded that they were entitled to rely on her advice.

C. <u>Attorney Akoury</u>

In challenging Freiberg's ability to prove that the claims against her lacked probable cause, Attorney Akoury points to the decision of the Connecticut Statewide Grievance Committee in a grievance case brought against her by Freiberg. In his complaint in that case, Freiberg alleged misconduct by Attorney Akoury based on her filing and pursuit of the CUTPA claim. The Grievance Panel dismissed the complaint after "carefully review[ing] the matter" and found that Akoury had not violated any of the Rules of Professional Conduct. In the Panel's view, the CUTPA claim reflected a good faith attempt to "extend and modify existing law to apply to the circumstances which [Akoury] reasonably believed to be unique and distinguishable from precedent." <u>Id.</u>

When "a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." <u>Univ. of Tenn. v. Elliott</u>, 478 U.S. 788, 799 (1986) (citation omitted) (quoting <u>Utah Constr. & Mining Co.</u>, 384 U.S. 394, 422

(1966)).  Even if the Grievance Panel's dismissal of Freiberg's complaint does not preclude him from suing, it strongly reinforces my conclusion that his vexatious litigation claim is unavailing because he cannot prove that the claims brought against him lacked probable cause.  Because he is unable to prove this element, all his claims must be dismissed.

## IV. Conclusion

For the foregoing reasons, the motions for summary judgment are hereby granted.  The Clerk may enter judgment and close the case.

So ordered this 30th day of September 2019.

/s/RNC
Robert N. Chatigny
United States District Judge